# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

# 05 - 10001 RWZ

JEFFREY FINK,

    Plaintiff

V.

SUN LIFE INSURANCE AND ANNUITY
COMPANY OF NEW YORK, SUN LIFE
ASSURANCE COMPANY OF AMERICA,
AND PROSKAUER ROSE LLP LONG
TERM DISABILITY PLAN,

    Defendants

MAGISTRATE JUDGE Cohen

RECEIPT #_____
CIVIL ACTION AMOUNT $150
SUMMONS ISSUED yes
LOCAL RULE 4.1___
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK. ____
DATE ___1-3-05___

## COMPLAINT

### INTRODUCTION

1. Plaintiff, Jeffrey Fink (Mr. Fink), brings this action against Defendants, Sun Life
   Insurance and Annuity Company of New York ("Sun Life"), Sun Life Assurance
   Company of America ("Sun Life Assurance Company") and the Proskauer Rose LLP
   Long Term Disability Plan ("Plan"), for violation of the Employment Retirement Income
   Security Act of 1974, as amended, 29 U.S.C. §1001 *et. seq.* (ERISA). Mr. Fink is a
   participant in the Plan, an ERISA welfare benefit plan whose claims administration is
   handled by Sun Life. The Plan is fully insured by a policy of insurance issued by Sun
   Life. The policy number is 86216.

2. This Complaint challenges the Defendants': 1) unreasonable and unlawful denial of Mr.
   Fink's long term disability ("LTD") income benefits despite the substantial medical
   evidence demonstrating Mr. Fink's qualifications for said benefits; 2) pattern of rejecting

and/or ignoring the substantial evidence supporting Mr. Fink's total disability pursuant to the terms of the Plan; 3) failure to provide Mr. Fink with a full and fair review of his claim; and 4) failure to provide a reasonable claims procedure that would yield a decision on the merits of Mr. Fink's claim.

3.  Mr. Fink is filing this action to recover benefits due under the Plan, to enforce the present rights existing therein, to clarify rights under the terms of the Plan, and to recover costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4.  This court has personal and subject matter jurisdiction over this case under 29 U.S.C. 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

## PARTIES

5.  Mr. Fink is a 41-year-old individual who currently resides in Wellesley, Massachusetts. Mr. Fink is a vested participant in an employee benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7).   Mr. Fink has standing to bring this action under 29 U.S.C. § 1132(a).

6.  The defendant, Sun Life Insurance and Annuity Company of New York, is a for-profit corporation, with its principal place of business at 122 East 42nd Street New York, New York, 10017.    Sun Life transacts business in Massachusetts and underwrites the Policy under which Mr. Fink is suing.

7.  Sun Life Insurance and Annuity Company of New York is the party responsible for processing the claims made under the Plan and making a final determination as to Plan participants' eligibility for LTD benefits.

8. Sun Life Insurance and Annuity Company of New York is a wholly-owned subsidiary of Sun Life Assurance Company of America.

9. Sun Life Assurance Company of America is a for-profit corporation with its principal place of business at One Sun Life Executive Park, Wellesley Hills, MA 02481.

10. At all times relevant to the claims asserted in this Complaint, Sun Life purported to act as an ERISA claims fiduciary with respect to participants of the plan, generally, and specifically, with respect to Mr. Fink, within the meaning of ERISA.

11. The Plan under which Mr. Fink is suing is a "long-term disability plan" issued by Sun Life to Proskauer Rose LLP, a for-profit corporation with its principal place of business at 1585 Broadway, New York, NY 10036-8299.   The policy number is 86216.

### STATEMENT OF FACTS

**Insurance Entitlement, Definitions of Disability, Discretion**

12. At the time he became disabled under the terms of the Plan, Mr. Fink was an attorney at the law firm of Proskauer Rose LLP in New York.

13. As an employee of Proskauer Rose LLP, Mr. Fink was entitled to LTD benefits under a contract of insurance between Proskauer Rose LLP and Sun Life.

14. Sun Life both funds and administers the Plan under which Mr. Fink is suing.

15. Under the terms of the Plan, neither Sun Life, Sun Life Assurance Company, nor Proskauer Rose LLP has discretionary authority to determine a claimant's eligibility for LTD benefits and to interpret the terms and provisions of the Plan.

16. Under the terms of the Plan, Mr. Fink is entitled to receive 60% of his monthly earnings per month.

17. The maximum period of payment under the Plan is age 65.

18. The Plan defines "total disability" as follows:

> **Total Disability or Totally Disabled** means during the Elimination Period and the next 24 months of Total Disability, the Employee, because of Injury or Sickness, is unable to perform all of the material and substantial duties of his own occupation. After benefits have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform all of the material and substantial duties of any occupation for which he is or becomes reasonably qualified for by education, training or experience.
>
> The loss of a professional or occupational license or the inability to obtain or qualify for a license for any reason does not, in itself, constitute Total Disability.
>
> To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days of Total Disability, Partial Disability or a combination of Total or Partial days of Disability.

## Mr. Fink's Claim for LTD Benefits

19. Mr. Fink presented a timely claim to Sun Life, asserting that he is an insured person, that he became totally disabled while insured, and that he is entitled under the Plan to LTD benefits for the period of time beginning in March 2004, when Sun Life and Sun Life Assurance Company wrongfully denied his benefits, and continuing thereafter without interruption through to the present, and continuing in the future until he reaches the age of 65 or is no longer disabled.

## Onset of Disability and Diagnoses

20. At the time he became disabled, Mr. Fink was an associate and then Senior Counsel in the Corporate Department of Proskauer Rose LLP.

21. The areas of Mr. Fink's practice focused on venture capital, leveraged buyout and other private equity funds; mergers and acquisitions; complex partnership arrangements; and the financing of businesses including banking and securities law matters.

22. In late 1990, Mr. Fink knocked himself unconscious on the top of a loft while jumping to get a telephone.

23. In early 1991, Mr. Fink began experiencing severe fatigue and concentration difficulties.    Over a period of about two months, Mr. Fink's visual acuity decreased from approximately a minus 5 to a minus 8. He also began to awaken during the night due to an unpleasant crawling sensation in his legs.

24. In July 1992, Mr. Fink's fatigue returned. At that time, he was diagnosed as having chronic fatigue syndrome or fibromyalgia and given a low dose (25 mg) of Elavil to take at bedtime.    Mr. Fink continued on various fibromyalgia medications through August 1999.

25. In February 1999, Mr. Fink developed an illness marked by a high fever (approximately 104°), extreme shortness of breath and a headache. The initial diagnosis by Dr. Gibson, who was covering for Mr. Fink's regular internist, was pneumonia, which Dr. Gibson treated with oral Trovan. Shortly after he began taking the antibiotic, Mr. Fink became extremely dizzy, with a sensation like jolts of electric currents running through his head. The symptoms were so severe that Mr. Fink had trouble getting out of bed.

26. After ten days on the antibiotic, Mr. Fink was examined by Dr. DiFabrizio, a pulmonologist.    Dr. DiFabrizio indicated his belief that Mr. Fink had been misdiagnosed and never had pneumonia. He suggested that Mr. Fink be evaluated by a rheumatologist, Dr. Lee, for possible autoimmune costochondritis.

27. Mr. Fink was subsequently examined by Dr. Lee, who noticed some liver dysfunction, a mild case of fibromyalgia as indicated by some trigger point

sensitivity, and possibly seronegative arthritis that, in combination with a case of bronchitis, could have caused the symptoms he was experiencing.

28. Mr. Fink's concentration abilities and his vision were never quite the same from that time forward. He had difficulty finding the energy to get through the day, his eyes seemed to tire from reading much more easily than before, and he began skipping words while reviewing documents. Mr. Fink also lost his quantitative skills overnight.

29. In the summer of 1999, Mr. Fink began to experience severe headaches accompanied by blurred vision and painful sensitivity to light. These headaches and their accompanying symptoms caused Mr. Fink to miss many days of work and to leave work early.

30. In late July 1999, Mr. Fink experienced another fever accompanied by a severe headache. A few days later, at the beginning of August, while sitting at his desk, Mr. Fink experienced short but intense bursts of vertigo that resembled the electric shocks he had felt in February, 1999. At the same time, Mr. Fink began experiencing great difficulty getting out of bed, lightheadedness, dizziness, imbalance and nausea. After the first day or so, the shock sensations ended; after the first week or so, the spinning dizziness was reduced to sporadic instances, but the sense that he was moving continued for hours at a time on a daily basis. Mr. Fink also had startling visual disturbances.

31. Mr. Fink also began experiencing overwhelming fatigue, which caused him to sleep 12-14 hours a day. Often when awake, Mr. Fink spent a lot of time sitting in a chair, staring into space. Walking became exhausting for Mr. Fink, as well.

32. Mr. Fink was unable to read or write for any significant length of time without experiencing blurry vision, dizziness and nausea.

33. On August 23, 1999, Mr. Fink attended a meeting with clients for a few hours. During the meeting, he became extremely nauseated as he tried to read the document he was discussing and had trouble following the conversation.

34. Mr. Fink's last day of work was August 23, 1999.

35. Since August 23, 1999, Mr. Fink has been diagnosed with brain injury, vestibular migraines secondary to the brain injury, cervical myofascial pain, as well as cervical facet dysfunction, and severe periodic limb movements in sleep.

36. Mr. Fink's symptoms include: fatigue, headaches, dizziness, vision problems, heightened sensory problems, restless limb sensation, attention and concentration difficulties, memory loss, organizational difficulties, difficulty in following-through with tasks, stress-related decompensation and irritability.

37. Since the onset of his disability, Mr. Fink has made innumerable efforts to recover or to improve his health, including: 1) consulting with over 34 doctors and other treatment providers ; 2) attempting over 30 different prescription medications for his disabling symptoms.; 3) attempting 5 kinds of mainstream therapy including vestibular rehabilitation therapy, occupational therapy, cognitive remediation therapy, physical therapy, and psychotherapy; 4) undergoing surgery on his sinuses, it an effort to alleviate his dizziness; 5) trying numerous complementary and alternative medicine treatments, including EEG biofeedback therapy (using scientific, peer-reviewed methods), a long series of acupuncture treatments by a Chinese-trained physician, cranial-sacral therapy, meditation, Reiki and yoga; 6)

trying numerous herbal and other non-prescription supplemental treatments, as well as herbal medicine prescribed by a traditional Chinese medicine doctor; 7) implementing many behavior and lifestyle changes; 8) moving to a quieter place to reduce his level of sensory stimulation; and 9) engaging in a self-motivated work hardening program.

## Application for LTD Benefits

38. Under the recommendation of his treating physicians, Mr. Fink applied for long-term disability benefits under his individual Northwestern Mutual disability policy and his group Sun Life policy following his last day of work on August 23, 1999.

39. Mr. Fink began receiving benefits from Northwestern Mutual in December 1999, following the conclusion of his elimination period for qualification for benefits.

40. Sun Life also approved Mr. Fink's claim for long-term disability benefits, with a payment onset date of February 2000.

## Vocational Rehabilitation/Volunteer Work

41. Over the years, Mr. Fink has regularly spoken with both insurers, and at Sun Life's request, various vocational rehabilitation counselors. Sun Life's vocational counselor indicated that Mr. Fink was extremely motivated to return to work, and communicated this information to Sun Life.

42. In the spring of 2002, to build his stamina, Mr. Fink began performing volunteer work. This course of activity was suggested to Mr. Fink by his physiatrist, Dr. Edwin Richter.

43. Originally, Mr. Fink began volunteering two mornings a week at NYU Medical Center as a patient representative assistant. A few months after Mr. Fink moved to Massachusetts, he started spending one morning a week as a patient representative at Newton-Wellesley

Hospital.

44. In the spring of 2003, Mr. Fink received training under the Massachusetts Department of Elder Affairs' Long-Term Care Ombudsman Program, and began spending an hour or two each week identifying and attempting to resolve problems raised by residents of Marist Hill Nursing Home in Waltham.

45. In the summer of 2003, Mr. Fink began working one morning a week as a consumer dispute mediator with the Consumer Assistance Center – Metrowest, Inc.

**Sun Life's Termination of Mr. Fink's Claim for LTD Benefits**

46. Near the end of 2003, Mr. Fink's Sun Life vocational claim handler was removed from his claim. At that time, Lisa Doherty-Shelton and Jason Binette of Sun Life took over the handling of Mr. Fink's claim.

47. In December 2003, at Sun Life's request, Mr. Fink underwent an insurance medical examination with Dr. Michael Alexander. Dr. Alexander issued an equivocal report, neither supporting or opposing Mr. Fink's total disability status.

48. On February 27, 2004, Ms. Doherty-Shelton called Mr. Fink notifying him that his claim had been terminated.

49. On March 3, 2004, Sun Life wrote Mr. Fink, terminating his claim for total disability benefits.

50. On March 7, 2004, Mr. Fink, through counsel, requested a complete copy of Mr. Fink's claim file in order to adequately respond to Sun Life's denial of Mr. Fink's claim.

51. On April 13, 2004, counsel for Mr. Fink wrote Sun Life requesting information missing from Mr. Fink's claim file.

52. On April 22, 2004, Jason Binette, the author of Mr. Fink's termination letter, wrote

counsel for Mr. Fink indicating that she "[has] been provided with the entire claim file for Mr. Fink."

53. To date, Mr. Fink has not been provided with all relevant documents pertinent to Sun Life's review of and denial of his claim for benefits.

**Mr. Fink's Appeal of Sun Life's Decision to Deny LTD Benefits**

54. On August 3, 2004, Mr. Fink, through counsel, appealed Sun Life's decision to deny him LTD benefits.

55. Mr. Fink's appeal included numerous affidavits supporting his total disability; narrative reports from his treating and examining physicians describing the basis for their conclusion that Mr. Fink was totally disabled; medical information regarding Mr. Fink's illnesses to respond to Sun Life's erroneous understanding of the nature of the illnesses; and updated medical records.

56. Mr. Fink's claim was also supported by his three treating physicians, Drs. Neera Kapoor, Edwin Richter and Dana DeWitt. Dr. Kapoor is an expert in optometry and vision and an Assistant Clinical Professor at SUNY-State College of Optometry. Dr. Richter is a Physiatrist at the Rusk Institute for Rehabilitation Medicine, an Associate Clinical Director at the Rusk Institute of Rehabilitation Medicine and a Clinical Assistant Professor in the Department of Rehabilitation Medicine at New York University. Dr. DeWitt is a neurologist in private practice at Newton-Wellesley Neurology Associates. Dr. DeWitt is also an Assistant Professor at Tufts University School of Medicine.

57. Mr. Fink's appeal also contained an independent consultation report with an expert in physical medicine and rehabilitation, Joanne Borg-Stein, M.D. Dr. Borg-Stein is the Chief of Service of Physical Medicine and Rehabilitation at Newton-Wellesley Hospital.

She is a Clinical Professor at Harvard University School of Medicine and is Board Certified in Physical Medicine and Rehabilitation, with a sub-specialty certificate in Pain Management.

58. After extensive examination of Mr. Fink, Dr. Borg-Stein certified Mr. Fink as totally disabled.

59. Mr. Fink's appeal also included an independent vocational examination report rendered by Paul R. Blatchford, Ed.M., a vocational expert. On April 1, 2004, Mr. Blatchford evaluated Mr. Fink after a review of his medical records, an in-person interview, and objective testing, concluding:

> It is my opinion, based upon a review of records provided, results of standardized vocational tests, and my evaluation of him, Mr. Fink does not possess the residual functional capacity of a vocational nature to perform, or more importantly, sustain, his past relevant skilled work as a Corporate Lawyer. It is further my opinion that at this juncture, Mr. Fink does not possess the residual functional capacity of a vocational nature to perform, or sustain, the duties of any occupation on a full- or part-time basis.

60. On August 13, 2004, Jason Binette, the Sun Life Benefits Analyst who rendered the decision terminating Mr. Fink's claim, wrote counsel for Mr. Fink acknowledging receipt of Mr. Fink's appeal, indicating that "[t]his information and your entire claim file will be reviewed during the appeal process."

61. Mr. Binette's August 13, 2004 letter further indicated that Sun Life "will make a decision on review within a reasonable period of time, but not later than 45 days or September 22, 2004, following receipt of your appeal request unless special circumstances require an extension of time for processing."

62. Following the submission of his appeal document, Mr. Fink, through counsel, supplemented the information contained therein with additional medical reports and

records, affidavits, including a supplemental affidavit from Mr. Fink, physical therapy records, and medical literature.

63. On September 20, 2004, Mr. Binette wrote counsel for Mr. Fink requesting an additional 45 days to conduct "a proper review of your client's claim. This extension will end on November 5, 2004."

64. On October 8, 2004, counsel for Mr. Fink wrote Mr. Binette, requesting the following:

> Moreover, if Sun Life conducts a medical or vocational review of Mr. Fink's file, whether internal or external, I would appreciate it if Sun Life would permit Mr. Fink's treating physician(s) and vocational examiner to respond to the review(s) prior to a final determination on Mr. Fink's claim for benefits. This would ensure that Sun Life conducts a full and fair review of Mr. Fink's claim prior to making a final determination.

65. Sun Life did not respond to this letter.

66. Although Sun Life retained Dr. Alexander to re-review Mr. Fink's file, Sun Life did not provide Mr. Fink or his treating physicians with a copy of this report.

67. On October 25, 2004, Mr. Binette called counsel for Mr. Fink informing her that he had sent Mr. Fink's appeal to Dr. Alexander for review. Mr. Binette further indicated that he would review Dr. Alexander's review of Mr. Fink's appeal, and would make an initial determination on Mr. Fink's appeal. Mr. Binette also stated that if he was unable to revere his initial decision on Mr. Fink's claim, he would send Dr. Alexander's review to counsel for Mr. Fink.

68. To date, Sun Life has not forwarded a copy of Dr. Alexander's record review to Mr. Fink as promised by Mr. Binette.

69. During the October 25, 2004 conversation, Mr. Binette requested an additional 45 days to review Mr. Fink's claim for benefits, as Sun Life had not received a copy of Dr.

Alexander's record review. This was Sun Life's second request for an extension of time to review Mr. Fink's appeal.

70. The ERISA regulations only provide insurers with a total of 90 days to review an appeal of a denial of benefits.

71. During the October 25, 2004 conversation, Mr. Binette indicated that if Sun Life's review of Mr. Fink's claim were to extend beyond November 5, 2004, Sun Life would reinstate Mr. Fink's benefits under a reservation of rights pending a final determination on his claim. Mr. Binette indicated that Sun Life has reinstated benefits under a reservation of rights in similar circumstances, when its review extended beyond the original 90-day period for review of a claimant's appeal.

72. On October 28, 2004, counsel for Mr. Fink engaged in a conference call with Mr. Binette and Lisa Doherty, Mr. Binette's supervisor. At the outset of this conversation, counsel for Mr. Fink indicated that Mr. Fink would assent to an extension of time for Sun Life's review with a reinstatement of benefits under reservation of rights. In response, Ms. Dougherty indicated that Mr. Binette incorrectly indicated that benefits would be reinstated under a reservation of rights, pending the completion of Sun Life's review.

73. During the October 28, 2004 conversation, Ms. Doherty further confirmed that Sun Life had not transferred Mr. Fink's claim to the appeals department at Sun Life, but rather, Mr. Binette had spent the entire prior 90 days re-reviewing Mr. Fink's claim. Ms. Doherty indicated that an additional 45 days was required for Mr. Binette to complete his re-review of Mr. Fink's claim, and for the appeals department to complete its review.

74. In response, Mr. Fink, through counsel, requested that Sun Life pay one month of benefits under a reservation of rights to accommodate the additional time Sun Life requested for the appeal review.

75. Sun Life denied Mr. Fink's request.

76. Mr. Fink assented to Sun Life's request for additional time to review his claim, despite its withdrawal of its offer to pay Mr. Fink's benefits under a reservation of rights.

77. On or about November 22, 2004, Mr. Fink was approved for Social Security Disability Income ("SSDI") benefits under a far more rigorous standard of disability than that which exists under the Plan.

78. Specifically, the Social Security Administration requires a claimant to show an "inability to do any substantial gainful activity by reason of any medically determinable physical or medical impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" in order to prove disability. 20 C.F.R. § 404.1505(a).

79. On December 2, 2004, Mr. Fink, through counsel, forwarded Sun Life a copy of an Independent Medical Examination report of Mel Glenn, M.D. as well as Mr. Fink's SSDI award letter.

80. On October 28, 2004, Mr. Fink underwent an independent examination with Mel Glenn, M.D. Dr. Glenn is one of America's most highly regarded physicians specializing in brain injury and other acquired neurological deficits. He is the Director of Outpatient and Community Brain Injury Rehabilitation at Spaulding Rehabilitation Hospital, a Professor at Harvard Medical School and the Project Director for the Spaulding/Partners Traumatic Brain Injury Model System at Harvard Medical School. Before moving to Harvard, Dr.

Glenn was the Chairman of the Department of Physical Medicine and Rehabilitation at

Boston University Medical School and Chairman of the Department of Rehabilitation at

Boston Medical Center.

81. After examining Mr. Fink and conducting a physical and mental status examination, Dr.

Glenn concluded:

**IMPRESSION**:   Mr. Fink has a complex set of symptoms that are probably
related to both a mild traumatic brain injury in 1990 and an infectious disease in
1999.  His fatigue, cognitive impairment and dizziness render him totally disabled
and unable to work competitively.

82. On or about December 14, 2004, counsel for Mr. Fink called Mr. Binette to inquire as to

the status of Sun Life's review of Mr. Fink's claim.

83. On or about December 14, 2004, Mr. Binette left counsel for Mr. Fink a telephone

message indicating that Mr. Fink's file had been transferred to the appeals department for

review.

84. On or about December 15, 2004, Morse Doane, an appeals examiner at Sun Life,

indicated to counsel for Mr. Fink that he had just received Mr. Fink's file from Mr.

Binette, and was beginning his review of Mr. Fink's claim.

85. Sun Life's additional 45 days for review of Mr. Fink's claim expired on December 20,

2004.

86. On December 21, 2004, Mr. Doane wrote counsel for Mr. Fink requesting approximately

one additional month, until January 14, 2005, to complete his review of Mr. Fink's

appeal.

87. To date, Sun Life has requested a total of 160 days to review Mr. Fink's appeal.

88. As of the date of this Complaint, Sun Life has failed to render a decision on Mr. Fink's

claim for benefits.

89. Sun Life's failure to render a determination on Mr. Fink's claim for benefits within the timeframe proscribed by ERISA demonstrates that its claims procedure was unreasonable.

90. Mr. Fink has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

91. Any discretion to which Sun Life may claim it is entitled under the Plan is negated by its failure to provide Mr. Fink with an explanation as to its adverse action and its failure to render a decision on Mr. Fink's appeal within the time frames proscribed by ERISA and its implementing regulations.

92. Sun Life has failed to meet the minimum requirements for the denial of Mr. Fink's LTD benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

93. Sun Life has also failed to meet the Plan requirements for review of claims that have been denied.

## Summary

94. Mr. Fink remains disabled to this day as a result of the debilitating symptoms of his conditions.

95. Mr. Fink has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

96. The Defendants failed to provide Mr. Fink with a full and fair review of his claim for benefits.

97. Any discretion to which Defendants may claim it is entitled under the Plan is negated by

its failure to provide Mr. Fink with an explanation as to its adverse action and a full and
fair review of his claim for benefits.

98. The decision to deny Mr. Fink's benefits was wrongful, unreasonable, irrational, contrary
to the substantial evidence, contrary to the terms of the Plan and contrary to law.

99. Sun Life was influenced by its financial conflict of interest, as both the administrator of
the Plan and the payor of benefits thereunder, when it denied Mr. Fink's benefits.

100.    Due to the unlawful denial of benefits under ERISA, Mr. Fink has been deprived
of his rightful long-term disability benefits.

101.    Mr. Fink has also suffered emotional distress and an exacerbation of his physical
condition as a result of Sun Life's actions.

102.    Due to the unlawful denial of benefits under ERISA, Mr. Fink has lost the use of
his long-term disability benefits.

103.    Having exhausted the administrative procedures provided by the Defendants, Mr.
Fink now brings this action.

### FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan
### Action for Unpaid Benefits)
### (ALL DEFENDANTS)

104.    Mr. Fink realleges each of the paragraphs above as if fully set forth herein.

105.    The Plan is a contract.

106.    Mr. Fink has performed all of his obligations under the contract.

107.    29 U.S.C. § 1132(a)(1)(B) states that:

A civil action may be brought ---

    (1)    by a participant or beneficiary –

        (A)  for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

108.     The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

109.     The Defendants unlawfully denied Mr. Fink's benefits in part by: (1) rejecting, without any basis, the substantial evidence supporting Mr. Fink's claim for disability; and (2) denying Mr. Fink a full and fair review of their decision to deny his benefits.

110.     In accordance with 29 U.S.C. §1132, Mr. Fink is entitled to be paid benefits under the Plan based upon his disabled status from and after March 2004, and continuing into the present.

111.     The Defendants have refused to provide Mr. Fink with these disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

112.     As a direct and proximate result of this breach, Mr. Fink has lost the principal and the use of his rightful LTD benefits.

## SECOND CAUSE OF ACTION
### (Attorneys' Fees and Costs)
### (ALL DEFENDANTS)

113.     Mr. Fink realleges each of the paragraphs above as if fully set forth herein.

114.     Under the standards applicable to ERISA, Mr. Fink deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

115.    The Defendants have the ability to satisfy the award.

116.    Mr. Fink's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

117.    The Defendants acted in bad faith in denying Mr. Fink benefits under the Plan.

118.    The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

    i.  Declare, adjudge and decree that Mr. Fink is entitled to ongoing LTD benefits as calculated under the terms of the Plan;

    ii.  Award Mr. Fink the full amount of unpaid benefits under the Plan to which he is entitled, together with such pre-judgment interest as may be allowed by law;

    iii.  Order that the Defendants make restitution to Mr. Fink in the amount of any losses sustained by Mr. Fink in consequence of the wrongful conduct alleged herein, together with prejudgment interest;

    iv.  Award Mr. Fink the costs of this action and reasonable attorneys' fees; and

    v.  Award such other relief as the court deems just and reasonable.

Dated: December 31, 2004                Respectfully submitted for the Plaintiff,

By:     _____

Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK, P.C.
44 School Street, Suite 410
Boston, MA 02108
617-723-7470

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)_____ Jeffrey Fink v. Sun Life Insurance and Annuity

Company of New York _____

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL

COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

| | | | |
|---|---|---|---|
| ___ | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. | |
| X | II. | 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. | *Also complete AO 120 or AO 121 for patent, trademark or copyright  cases |
| ___ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. | |
| ___ | IV. | 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. | |
| ___ | V. | 150, 152, 153. | |

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)).  IF MORE THAN ONE PRIOR RELATED CASE
HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

N/A _____

4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
COURT?

YES ☐    NO **X**

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
PUBLIC INTEREST?   (SEE 28 USC §2403)

YES ☐    NO **X**

IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

YES ☐    NO **X**

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
28 USC §2284?

YES ☐    NO **X**

7.  DO ALL OF THE PARTIES  IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"),  RESIDING IN MASSACHUSETTS RESIDE IN THE
SAME DIVISION? -  (SEE LOCAL RULE 40.1(D)).

YES **X**    NO ☐

A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

EASTERN DIVISION  **X**    CENTRAL DIVISION ☐    WESTERN DIVISION ☐

B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
GOVERNMENTAL AGENCIES,  RESIDING IN MASSACHUSETTS RESIDE?

EASTERN DIVISION ☐    CENTRAL DIVISION ☐    WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   MALA  M. RAFIK _____

ADDRESS ___ ROSENFELD & RAFIK, P.C., 44 SCHOOL STREET, SUITE 410, BOSTON, MA 02108 _____

TELEPHONE NO.    (617) 723-7470 _____

(Fink Category Form.wpd  - 11/27/00)

%JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

JEFFREY FINK

**DEFENDANTS**

SUN LIFE INSURANCE AND ANNUITY COMPANY OF NEW YORK, SUN LIFE ASSURANCE COMPANY OF AMERICA, PROSKAUER ROSE LLP LONG TERM DISABILITY PLAN

**(b)** County of Residence of First Listed Plaintiff  Norfolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Mala M. Rafik
Rosenfeld & Rafik, P.C.
44 School Street, Suite 410
Boston, MA 02108
(617) 723-7470

Attorneys (If Known)

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1 U.S. Government
Plaintiff

X 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                     and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 362 Personal Injury— Med. Malpractice | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 365 Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 320 Assault, Libel & Slander | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 340 Marine | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | X 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

x 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION    (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

The Plaintiff files this action under ERISA, 29 U.S.C. §1132(a) to recover disability benefits due him under his long-term disability plan administered by Sun Life Insurance and Annuity Company of New York and Sun Life Assurance Company of America.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY    (See instructions):

JUDGE                    DOCKET NUMBER

DATE  12.31.04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____